UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No.16-CV-21289-MORENO

SETAI HOTEL ACQUISITION LLC,

    Plaintiff,

v.

LUXURY RENTALS MIAMI BEACH, INC., a Florida corporation, and KRISTINE HALL, an individual,

    Defendants.

## DEFENDANTS' MOTION TO DISMISS
## AND INCORPORATED MEMORANDUM OF LAW

Defendants, LUXURY RENTALS MIAMI BEACH, INC. ("LRMB"), and KRISTINE HALL ("Hall") (collectively, "Defendants") hereby move, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss the Complaint (D.E. 1) for failure to state a claim and in support thereof state as follows:

### INTRODUCTION

LRMB is a real estate brokerage which manages privately owned properties in numerous luxury condo-hotels in South Florida, including at The Setai Resort & Residences in Miami Beach ("The Setai"). Cmpl. ¶ 12. **Since 2009** LRMB has offered these residences ("Units") for rent through its website www.luxuryrentalsmiamibeach.com, on behalf of owners of private residences at The Setai ("Unit Owners"). Plaintiff contends that LRMB's offering of these Units for rent on its website constitutes unauthorized use of The Setai Mark, trademark counterfeiting, trademark infringement, unfair competition, trademark dilution and tortious interference. *Id*. ¶ 14. This

innocuous, factually accurate and legal conduct is the sole basis for the Complaint, which must be dismissed in its entirety.

The claims asserted by Plaintiff in the Complaint are defeated by the plain language of The Declaration of Setai Resort & Residences, a Condominium, and the amendments thereto (the "Declaration")[1]. The Declaration expressly permits, and in some cases requires, Unit Owners to use third-party rental agencies such as LRMB to provide rental services with respect to the Units. In fact, the Declaration also directs Unit Owners to refer to The Setai using its proper name – the trademark at issue. Indeed, the only use of the Setai Mark alleged in the Complaint, and the only way Defendants have ever used the Setai Mark, has been to properly and accurately describe the location of the Units being offered for rent (e.g., "Private Residences at The Setai," and "This is a private residence located at 101 20th Street, Miami Beach, FL 33139 otherwise known as The Setai."). This use clearly does not and cannot constitute trademark infringement under the basic premise of fair use and is the kind of use explicitly permitted under the terms of the Declaration. Moreover, Defendants have been offering units for rent at The Setai on behalf of Unit Owners for approximately seven (7) years; Plaintiff (that purportedly purchased the Hotel Unit of the Setai in or around December 2014) cannot now bring a baseless trademark infringement action in an attempt to prohibit Unit Owners, or their rental agents, from accurately describing the location of their Units as being located at The Setai.

Moreover, Plaintiff's allegation that Defendants committed tortious interference by taking "actions intended to induce a breach or disruption of the Declaration by, *inter alia*, encouraging Unit Owners to use Defendants for transient rental services such as check-in services, daily services,

---

[1] "[W]here the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal, and the defendant's attaching such documents to the motion to dismiss will not require conversion of the motion into a motion for summary judgment." *Brooks v. Blue Cross & Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).

concierge and marketing services instead of SHA" (Cmpl. ¶ 57) is untenable. Such alleged conduct is neither prohibited by the law, nor by the Declaration. It is well established that Defendants' offering for rent Units at The Setai on behalf of Unit Owners, consistent with the Declaration and in order to promote their own financial and economic interests, cannot constitute tortious interference.

The motive of the lawsuit is clear: After Plaintiff purchased the Setai Hotel Unit in or around December 2014, Plaintiff has done everything in its power to prevent Unit Owners from lawfully offering their units for rent through third-party rental agencies (such as LRMB), and thereby coercing the Unit Owners into joining Plaintiff's hotel rental pool program. Plaintiff is now misusing the court system and contorting well-established principles of law in a further attempt to keep out third party rental agencies, which as discussed herein, are expressly permitted by the Declaration$^2$. This Complaint should be dismissed with prejudice.

## LEGAL ARGUMENT

**I.    Plaintiff's Claims are Contradicted by the Declaration.**

Plaintiff's Complaint must be dismissed as the claims asserted therein are contradicted by the express language of the Declaration (attached hereto as Exhibit A). Although the Declaration is not attached to the Complaint, the Court may still consider it without converting this motion to dismiss into one for summary judgment. The law of this Circuit is clear that "where the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal, and the defendant's attaching such documents to the motion to dismiss will not require conversion of the motion into a motion for summary judgment." *Brooks v. Blue Cross & Blue Shield of Florida, Inc.*,

---

[2] In fact, on the same date this suit was filed, Plaintiff filed a similar suit against another third-party rental agency, Miami Beach Luxury Rentals, Inc., and its principal Allen Tuller, making similar allegations. That case is currently pending in front of Judge Scola. See, *Setai Hotel Acquisition, LLC v. Miami Beach Luxury Rentals, Inc., and Allen Tuller*, Case no. 1:16-cv-21296-RNS.

116 F.3d 1364, 1369 (11th Cir. 1997); *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005). Indeed, **where the allegations of a complaint are expressly contradicted by the plain language of an attachment, the attachment controls, and the allegations are nullified**. *Degirmenci v. Sapphire-Fort Lauderdale, LLLP*, 693 F. Supp. 2d 1325, 1341 (S.D. Fla. 2010) (emphasis added); *Weaver v. Opera Tower, LLC*, 07-23332-CIV, 2008 WL 4145520, at *3 (S.D. Fla. Aug. 1, 2008). Thus, dismissal of a complaint is warranted where, as here, exhibits attached to a motion to dismiss directly contradict the allegations of the complaint. *Simon v. Mortgage Elec. Registration Sys., Inc.*, 13-80190-CIV, 2013 WL 3873956, at *4 (S.D. Fla. Jul. 25, 2013).

The sole factual allegation of misconduct in the entire Complaint is that "Luxury Rentals offers to rent rooms and/or units at a variety of hotels, including The Setai." Cmpl. ¶14. Plaintiff contends that this "unauthorized use" of the Setai Mark constitutes counterfeiting, trademark infringement, unfair competition, dilution and tortious interference. However, this conduct is expressly permitted by the Declaration. The Declaration – as alleged by Plaintiff in the Complaint – governs the hotel units as well as well as the condominium units at The Setai. Compl. ¶¶53, 54. The Declaration states that "each Unit Owner shall have the right to sell, lease or mortgage his or her Unit" and specifically provides:

> It is intended that the Units may be used for transient and/or hotel rentals. As such, leasing of Units (other than Club Units) or portions thereof shall not be subject to the approval of the Association and/or any other limitations, other than expressly provided herein…**the foregoing authorization for the use of Units for rental purposes shall refer solely to rentals to the public for transient or hotel occupancy conducted by the Unit Owner directly or through rental agencies or real estate brokers…**

Ex. A, at ¶¶ 16.7, 17 (emphasis added). Thus, under the very terms of the Declaration, Units in The Setai can be rented by the Unit Owner directly or through third party "rental agencies or real estate brokers," such as LRMB. Consistent with this provision, the use of third party rental agencies by

Unit Owners for rental-related services is contemplated and even mandated throughout the Declaration. The Second Amendment to the Declaration states that

> …all service issues encountered [by rental tenant] while in-residence in the Unit Owner's Unit **shall be addressed by the Unit Owner or its third party agent**," and that "[t]he distribution and exchange of Unit keys **must be managed by a third party appointed at the sole cost and expense of the Unit Owner**.

Ex. A, ¶¶ 17.1(c), (d) (emphasis added). Moreover, the Declaration states that "[t]he name by which this condominium is to be identified is **SETAI RESORT & RESIDENCES, A CONDOMINIUM**," thereby instructing Unit Owners (and, consequently their agents), to refer to The Setai by its proper name. Ex. A, ¶1.3.

Pursuant to these terms, Defendants' conduct in offering to rent Units at The Setai, and using the Setai Mark to describe the location of such Units is wholly permissible. The terms of the Declaration contradict Plaintiff's conclusory allegations that Defendants offering of such services is wrongful, and therefore dismissal of the Complaint in its entirety is warranted. *Simon*, 2013 WL 3873956, at *4 (dismissing complaint after considering promissory note attached to motion to dismiss and central to complaint); *Degirmenci*, 693 F. Supp. 2d at 1341 (dismissing complaint where allegations were expressly contradicted by written contract); *Weaver*, 2008 WL 4145520, at *3 (same). As such, the Complaint should be dismissed with prejudice.

**II.    Defendants' use of the Setai Mark Constitutes Nominative Fair Use.**

Even if Defendants' conduct was not expressly permitted by the Declaration, LRMB's use of the Setai Mark on its website[3] to describe the location of Units available for rent is nonetheless permissible as fair use.

---

[3] Select images of LRMB's website (www.luxuryrentalsmiamibeach.com) depicting its use of the Setai Mark are attached hereto as Exhibit B. As discussed above, because these images are central to Plaintiff's Complaint and are not disputed, the Court may properly consider them without converting this Motion to Dismiss into one for summary judgment. *See Brooks*, 116 F.3d at 1369; *Day*, 400 F.3d at 1276. If, however, the Court determines that these materials cannot be considered

"The fair-use defense, in essence, forbids a trademark registrant to appropriate a descriptive term for its exclusive use and so prevent others from accurately describing a characteristic of their goods [or services]." *Int'l Stamp Art, Inc. v. U.S. Postal Serv.*, 456 F.3d 1270, 1274 (11th Cir. 2006). A fair-use defense is established if a defendant demonstrates that its use is (1) other than as a mark, (2) in a descriptive sense, and (3) in good faith. *Id.* "Where a nominative use of a mark occurs without any implication of affiliation, sponsorship or endorsement—i.e. likelihood of confusion—the use lies outside the strictures of trademark law." *MPS Entm't, LLC v. Abercrombie & Fitch Stores, Inc.*, 110 U.S.P.Q.2d 1287 (S.D. Fla. 2013). And, where, the pleadings fail to allege use of a mark beyond nominative fair use, as is the case here, the plaintiff fails to state a claim for which relief can be granted and dismissal is warranted. *Stevo Design, Inc. v. SBR Mktg. Ltd.*, 919 F. Supp. 2d 1112, 1124 (D. Nev. 2013); *see also Kassa v. Detroit Metro Convention & Visitors Bureau*, 117 U.S.P.Q.2d 1317 (E.D. Mich. 2015) citing *Hensley Manufacturing, Inc. v. Propride, Inc.*, 579 F.3d 603, 613 (6th Cir. 2009) ("There is simply no reason not to grant a motion to dismiss where the undisputed facts conclusively establish an affirmative defense of fair use as a matter of law.").

The federal courts have held that "one can use another's mark truthfully to identify another's goods or services in order to describe or compare its product to the markholder's product." *Id*; *see also*, *New Kids on the Block v. New America Pub., Inc.*, 971 F.2d 302 (9th Cir.1992); *WCVB–TV v. Boston Athletic Ass'n*, 926 F.2d 42 (1st Cir.1991). For instance, in *New Kids on the Block*, the court upheld a newspaper's use of polling questions naming the band "New Kids on the Block," because

---

on a motion to dismiss, Defendants request that the Court treat this Motion as one for summary judgment pursuant to Fed. R. Civ. P. 12(d). *Jones v. Auto. Ins. Co. of Hartford, Conn.*, 917 F.2d 1528, 1531-32 (11th Cir. 1990); *Johnson v. Unique Vacations, Inc.*, 498 Fed.Appx. 892, 894 (11th Cir. 2012). Where, as here, the extra-pleading evidence is "comprehensive and will enable a rational determination of a summary judgment motion," conversion is warranted. *Proctor v. D.C.*, 74 F. Supp. 3d 436, 448 (D.D.C. 2014); *see also Amey, Inc. v. Gulf Abstract Title, Inc.*, 758 F.2d 1486, 1506 (11th Cir. 1985) (holding that summary judgment is proper "when the record becomes clear enough to disclose that further discovery is not needed to develop significant aspects of the case and that such discovery is not likely to produce a genuine issue of material fact.").

there were no words available to denote the band other than its name. 971 F.2d at 306 (9th Cir. 1992). In *WCVB–TV v. Boston Athletic Ass'n*, the court found permissible a television station's use of the name "Boston Marathon" to describe that event. 926 F.2d 42 (1st Cir.1991). As explained by the court in *Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1153 (9th Cir. 2002), a case involving nominative fair use of Princess Diana's name and likeness:

> We explained in *New Kids* that one might refer to 'the two-time world champions' or 'the professional basketball team from Chicago,' but it's far simpler (and more likely to be understood) to refer to the Chicago Bulls. Similarly, one might refer to 'the English princess who died in a car crash in 1997,' but it is far simpler (and more likely to be understood) to refer to 'Princess Diana.'

(internal citations omitted). Likewise, the federal courts have found fair use where the mark is being used to describe a geographic location. *See*, *Schafer Co. v. Innco Mgmt. Corp.*, 797 F. Supp. 477, 481 (E.D.N.C. 1992) *aff'd,* 995 F.2d 1064 (4th Cir. 1993); *Bonaventure Associates v. Flyer Pub. Corp.*, 621 F. Supp. 107, 110 (S.D. Fla. 1985). In *Schafer Co.*, the court found that the defendant's use of the phrase "South of the Border Exit" on billboards to denote the location of its amusement park constituted fair use of the plaintiffs' "South of the Border" mark. 797 F. Supp. at 481 (E.D.N.C. 1992) ("Even if one seller has achieved secondary meaning in a geographic term, as plaintiffs certainly have with 'South of the Border,' anyone who is in fact located in that place has a right to tell purchasers of his location.") Similarly, in *Bonaventure Associates*, this Court found that a newspaper's use of the term "Bonaventure" to aid its readers and advertisers by denoting that the publication's contents were tailored to the readers in the Bonaventure area was fair use of the plaintiff's "Bonaventure" mark. 621 F. Supp. at 110 (S.D. Fla. 1985).

"[M]any circuits have held that such nominative use of a mark... lies outside the strictures of trademark law." *Suntree Techs., Inc. v. EcoSense Int'l, Inc.*, 802 F. Supp. 2d 1273, 1282 (M.D. Fla. 2011), *aff'd,* 693 F.3d 1338 (11th Cir. 2012) (internal citations omitted); *citing Bd. of Supervisors for La. State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.,* 550 F.3d 465, 488 (5th Cir. 2008)

7

(holding that it is permissible to "use another's mark truthfully to identify another's goods or services"); *Century 21 Real Estate Corp. v. LendingTree, Inc.,* 425 F.3d 211, 231–32 (3d Cir. 2005) (recognizing "nominative fair use" as an affirmative defense to trademark infringement); *c.f. Tiffany (NJ) Inc. v. eBay Inc.,* 600 F.3d 93 (2d Cir.2010) (recognizing the underlying principles of nominative fair use); *Universal Commc'n Sys., Inc. v. Lycos, Inc.,* 478 F.3d 413, 424 (1st Cir.2007) (same).

Here, the only use of the "Setai" mark alleged by Plaintiff is LRMB's offering to rent condominium units located at The Setai on its website www.luxuryrentalsmiamibeach.com and accurately referring to the units as being located "at The Setai." Cmpl. ¶¶ 11, 14. As the images of LRMB's website confirm, Defendants' use clearly constitutes fair use. The Setai Mark is not used as a trademark to indicate the origin of LRMB's services. Indeed, The Setai Mark is not part of LRMB's domain name, nor does it appear as part of the title of the webpage. *Cf. Hakkasan LV, LLC v. Tsang Hang Wang*, 2015 WL 1202750, at *3 (D. Nev. March 17, 2015) (denying fair use defense where trademark was part of the domain name of the infringing website). The use of The Setai Mark is not stylized and appears in plain font. *Cf. World Impressions, Inc. v. McDonald's Corp.*, 235 F. Supp. 2d 831, 843 (N.D. Ill. 2002) (holding that using the stylized form of the word "Disneyland" and the castle design, rather than a plain rendition of the word "Disneyland," was more than simply identifying Disneyland's location on a map and instead implied that Disney sponsored or endorsed its maps.). On the contrary, the Setai Mark is being used solely in a descriptive sense – to accurately describe the geographic location of Units for rent located at The Setai. This is unquestionably permissible fair use. *See e.g. Bonaventure Associates*, 621 F. Supp. at 110.

Defendants' use of the Setai Mark is also clearly in good faith. The LRMB website reflects the name "The Setai" just like it reflects the name of other buildings at which it is offering units for rent such as the Ritz-Carlton, the W and the 1 Hotel. These names are simpler and more likely to be

understood by Defendants' customers than the street addresses of such buildings. Moreover, the Units listed by LRMB as being located at The Setai, <u>are actually located there</u>. There is no allegation that Defendants are trying to pass off units at other buildings as being located at The Setai; and, as detailed above, the Declaration expressly permits Unit Owners to use third party rental agencies such as LRMB to rent their Units at The Setai, and instructs that The Setai be referred to by its proper name. For these reasons, Plaintiff's trademark claims in Counts one through six must be dismissed on the ground of fair use.

**III.    Count I Fails to State a Cause of Action for Counterfeiting.**

In addition to the reasons stated above, Count I for counterfeiting must also be dismissed for failure to state a cause of action. A counterfeit mark is a "<u>spurious</u> mark which is identical with, or substantially indistinguishable from, a registered mark." *It's a 10, Inc. v. Beauty Elite Group, Inc.*, 110 U.S.P.Q.2d 1116 (S.D. Fla. 2013) (emphasis added). While not defined by the Lanham Act, the courts have given "spurious" its ordinary meaning, defined by Black's Law Dictionary as "deceptively suggesting an erroneous origin, fake." *See*, *G6 Hosp. Franchising LLC v. Hi Hotel Group, LLC*, 2016 WL 1109216, at *4 (M.D. Pa. March 22, 2016). Plaintiff has failed to (and cannot in good faith) allege use of a spurious mark by Defendants.

Plaintiff's sole allegation of Defendants' use of The Setai Mark is that LRMB offers to rent Units at The Setai on its website and describes those units (accurately) as being located "at The Setai." Plaintiff does not allege that Defendants offer to rent rooms and/or units that purport to be at The Setai but are actually at other hotels or condominiums, nor does Plaintiff allege that Defendants are using a "fake" Setai Mark, and trying to pass it off as genuine. Defendants' use of the words "The Setai" to describe units that are actually located at The Setai is not spurious and therefore does not constitute counterfeiting. This would be true even if such use was not authorized (although in this case it is expressly authorized by the Declaration). *Motor City Bagels, L.L.C. v. Am. Bagel Co.*,

9

50 F. Supp. 2d 460, 489 (D. Md. 1999) ("Although the use of an original trademark is without authorization, it is not the use of a counterfeit mark."); *Pennzoil-Quaker State Co. v. Smith*, 2:05CV1505, 2008 WL 4107159, at *22 (W.D. Pa. Sept. 2, 2008) ("use of the original trademark…without authorization from Plaintiff, constitutes infringement, but is not the use of a counterfeit mark."). Accordingly, for all of the reasons stated herein, Count I for trademark counterfeiting must be dismissed.

### IV.  Count VII Fails to State a Cause of Action for Tortious Interference.

Additionally, Count VII for tortious interference must be dismissed for failure to state a cause of action. Under Florida law, a plaintiff must set forth four elements to state a claim of tortious interference: (1) the existence of a business relationship; (2) defendant's knowledge of that business relationship; (3) defendant's intentional and unjustifiable interference with that business relationship and (4) damages to plaintiff as a result. *Romika-USA, Inc. v. HSBC Bank USA, N.A.*, 514 F. Supp. 2d 1334, 1339 (S.D. Fla. 2007). Plaintiff has failed to allege any intentional and unjustifiable interference by Defendants.

First, it is well established that "there can be no interference with a contractual relationship where the action complained of is undertaken to safeguard or promote one's financial or economic interest." *Bruce v. Am. Dev. Corp.*, 408 So. 2d 857, 858 (Fla. 3d DCA 1982) (affirming Rule 12(b)(6) dismissal of tortious interference cause of action). It is undisputed that Defendants' business is the rental of rooms and/or units in various luxury hotel and condominium buildings in South Florida. If Unit Owners at The Setai contract with LRMB to rent their Units, as they are explicitly permitted to do by the Declaration, it is not unlawful or improper for LRMB to accept that engagement in order to promote its own financial or economic interests. Such conduct is simply not tortious.

Second, as detailed in Section I above, the terms of the Declaration expressly permit the conduct at issue in the Complaint[4]. Florida law is clear that where the conduct at issue is permitted by contract, such conduct is privileged and does not constitute tortious interference. *See, e.g. Florida Tel. Corp. v. Essig*, 468 So. 2d 543, 544-45 (Fla. 5th DCA 1985) (no tortious interference where telephone cable splicing contract expressly permitted telephone company to request that general contractor remove from the job any employees of the contractor or its subcontractors who were not doing an adequate job or were conducting themselves in inappropriate manner); *see also*, *In re Gen. Plastics Corp.*, 158 B.R. 258, 288 (Bankr. S.D. Fla. 1993) (no tortious interference where Capital Factors had the contractual right under the Agreement to terminate advances and to terminate the Agreement without notice under the circumstances present); *Peninsula Fed. Sav. & Loan Ass'n v. DKH Properties, Ltd.*, 616 So. 2d 1070, 1073 (Fla. 3d DCA 1993) (steps taken pursuant to the contract with the borrower cannot be deemed "interference," nor "improper," and was not tortious behavior.); *Romika-USA, Inc.*, 514 F. Supp. 2d at 1340 (no tortious interference where Columbia was contractually entitled, under the Letter Agreement and the letter of credit, to have HSBC pay Romika-USA on its behalf only when Romika-USA presented the documents required by the letter of credit, or when Columbia, in its sole discretion, chose to waive this requirement).

Accordingly, Plaintiff has not alleged any facts that demonstrate Defendants "committed any actionable wrong, [or] that [they] engaged in any activity which is or should be recognized by the law of torts as giving rise to an action by [Plaintiff] to recover damages on [its] behalf." *Ethyl Corp. v. Balter*, 386 So. 2d 1220, 1225 (Fla. 3d DCA 1980).

---

[4] Paragraph 55 of the Complaint falsely alleges that "[t]he Declaration provides that SHA has the exclusive right to provide hotel and/or transient rental services to The Setai and to the unit owners including, without limitation, check-in services, daily services, concierge and marketing services." There is no such language contained in the Declaration. Moreover, Plaintiff has not alleged any facts demonstrating that Defendants are offering any services other than to "rent rooms and/or units" at The Setai. *See* Cmpl. ¶ 14.

Case No.16-CV-21289-MORENO

## **CONCLUSION**

Based on the foregoing, Plaintiff's Complaint must be dismissed with prejudice.

Respectfully submitted,

COFFEY BURLINGTON
*Co-Counsel for Defendants*
2601 South Bayshore Drive, Penthouse
Miami, Florida  33133
Telephone:     (305) 858-2900
Facsimile:      (305) 858-5261


By:      s/   Gabriel Groisman
    Gabriel Groisman, FBN 25644
       ggroisman@coffeyburlington.com
    Susan E. Raffanello, FBN 676446
       sraffanello@coffeyburlington.com
    Erika S. Handelson, FBN 91133
       ehandelson@coffeyburlington.com
    **Secondary:**     yvb@coffeyburlington.com
    **Tertiary:**         service@coffeyburlington.com


- And -


Edward S. Polk, Fla. Bar No. 239860
Octavia M. Green, Fla. Bar No. 119179
COLE, SCOTT & KISSANE, P.A.
*Co-Counsel for Defendants*
9150 South Dadeland Boulevard, Suite 1400
Miami, Florida 33156
Telephone:  (305) 350-5338
Facsimile:   (305) 373-2294
Email: edward.polk@csklegal.com
octavia.green@csklegal.com

Case No.16-CV-21289-MORENO

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 5, 2016, I electronically filed the foregoing with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record on the Service List below via transmission of Notice of Electronic Filing generated by CM/ECF.

| **Daniel F. Benavides, Esq.**<br>dbenavides@shutts.com<br>SHUTTS & BOWEN LLP<br>200 South Biscayne Boulevard<br>Miami, Florida 33131<br>Telephone: (305) 358-6300<br>Facsimile: (305) 381-9982<br>**Secondary:**<br><br>*Counsel for Plaintiff* | **Daniel J. Barsky, ESq.**<br>dbarsky@shutts.com<br>SHUTTS & BOWEN LLP<br>1100 CityPlace Tower<br>525 Okeechobee Boulevard<br>West Palm Beach, Florida 33401<br>Telephone: (561) 835-8500<br>Facsimile: (561) 650-8530<br>**Secondary:**<br><br>*Counsel for Plaintiff* |
|---|---|

    s/ Gabriel Groisman